UNITED TRANSPORTATION UNION v DEPARTMENT OF
TRANSPORTATION

Docket No. 74256. Submitted May 3, 1984, at Lansing.—Decided June
28, 1984.

Plainwell Paper Company, Inc., applied to the Department of
Transportation to build a loading dock with a reduced railroad
track clearance. The department authorized the variance and
the United Transportation Union and David Brickey appealed
to the Ingham Circuit Court. The court, Thomas L. Brown, J.,
held that the appeal was governed by the statute governing
appeals of Public Service Commission orders and affirmed. The
union and Brickey appealed. *Held:*

1. Appeals from decisions of the Department of Transporta-
tion concerning exceptions to the required clear spaces over
and adjacent to railroads are governed by the Administrative
Procedures Act.

2. The grant of an exception to the required clear spaces over
and adjacent to railroads is predicated upon not creating a
condition unduly hazardous to railroad employees. The hearing
officer erred in balancing the safety of railroad employees with
the safety of others in deciding to grant the exception.

Reversed and remanded to the hearing officer with instruc-
tions to determine whether or not the proposed construction
presents an unduly hazardous condition to the railroad employ-
ees.

1. RAILROADS — CLEAR SPACES — APPEAL.

Appeals from decisions of the Department of Transportation
concerning exceptions to the required clear spaces over and
adjacent to railroads are governed by the Administrative Proce-
dures Act (MCL 24.301 *et seq.;* MSA 3.560[201] *et seq.).*

2. RAILROADS — CLEAR SPACES — VARIANCES.

The grant of an exception to the required clear spaces over and
adjacent to railroads is predicated upon not creating a condi-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 2 Am Jur 2d, Administrative Law § 539 *et seq.*
  65 Am Jur 2d, Railroads §§ 29-34.

tion unduly hazardous to railroad employees; a hearing officer errs in deciding the issue by balancing the safety of railroad employees against the safety of other persons (MCL 470.103; MSA 22.804[3]).

*Law Offices of James F. Schouman & Associates* (by *James F. Schouman)*, for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Charles C. Schettler, Jr.,* Assistant Attorney General, for the Michigan Department of Transportation.

*Bartl & Haslett, P.C.* (by *Edward C. Bartl)*, for Plainwell Paper Company, Inc.

Before: SHEPHERD, P.J., and CYNAR and S. D. BORMAN,* JJ.

PER CURIAM. United Transportation Union (UTU) and David Brickey appeal as of right from a circuit court order which upheld the Michigan Department of Transportation's (MDOT's) final order. MDOT's order allowed Plainwell Paper Co., to build a loading dock with a reduced railroad track clearance.

Plainwell petitioned MDOT regarding railroad track clearances at its proposed warehouse facility in Plainwell, Michigan. The facility would replace an existing structure already serviced by Conrail tracks. The new plan called for an east track and a west track. Plainwell proposed a clearance of 5'9" between the loading dock and the west track, instead of the 8'6" clearance generally prescribed by the clearance space act. MCL 470.101 *et seq.;* MSA 22.804(1) *et seq.* Appellants, as representatives of the railway workers, objected to the proposed clearance.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

At a hearing held before the hearing officer, Bruce Vander Weele, an engineer who helped design the proposed loading dock, testified for Plainwell. He said that the anticipated design would make the loading process easier and more economical. More importantly, it would decrease the likelihood of forklifts falling off the dockplate or falling in between the railroad car and the loading dock. Apparently, the proposed design included a cement "lip" which would extend towards the track, thus creating the subclearance. On cross-examination, Vander Weele said that complying with the standard clearance would not increase the cost of building the dock. Thomas Will, a transportation analyst for Conrail, also testified for Plainwell. He stated that allowing a standard clearance on one of the tracks would allow the trainmen to safely perform their duties.

David Brickey, the present director of the UTU, stated that the proposed design would make it impossible for the brakemen to perform their jobs. He noted that the trainmen would have to check both sides of the train. The men would be required to go underneath the dock's lip in order to do their job. Brickey deemed this a hazardous process regardless of whether or not one track had standard clearance. Paul Noordhoek, the Conrail conductor for the line that currently services Plainwell, testified that the proposed design would only give a 10-inch clearance between the side of the car and the loading dock. Noordhoek stated that there were several facilities built prior to the enactment of the clearance space act that still have subclearances. The train crews are forced to work around these "hazards".

On September 30, 1981, the hearing officer issued a proposal for a decision which recommended

the subclearance. This proposal was later adopted as a final order by MDOT's director, John P. Woodford. Plainwell's initial petition requested subclearance on both east and west tracks. However, the final order approved the subclearance for the west track only. The east track was designated as the "operating" track to allow the trainmen to perform their assigned duties. Plainwell was also ordered to post appropriate warning signs indicating the subclearance.

The issue for our determination is whether the circuit court erred in affirming MDOT's final order which granted the subclearance to Plainwell. The clearance space act of 1941, MCL 470.101 *et seq.;* MSA 22.804(1) *et seq.,* provides for the safety of railroad employees by prescribing minimum clearances with certain exceptions. MCL 470.102; MSA 22.804(2) reads in pertinent part:

"It shall be unlawful for any person or persons to construct, erect or place, and thereafter maintain, over or adjacent to any railroad track or sidetrack which is a part of or is in anywise connected with any railroad, any bridge, structure, pole or other movable or immovable obstruction which shall be within, or any loading or unloading device, the movable or immovable or fixed parts of which shall be within, the clear space of 8 feet 6 inches from either side of a perpendicular extending through the center line of said track * * * except by the written consent of the public service commission, as hereinafter provided."

The act anticipates that subclearances may be required at times, and provides that a party may petition the proper agency for a variance. MCL 470.103; MSA 22.804(3) states:

"Any person who, at any time on and after the effective date of this act, desires to construct, erect or

place, and thereafter maintain, over or adjacent to any railroad track or sidetrack which is a part of or is in anywise connected with any railroad, any bridge, structure, pole or other immovable obstruction which shall be within, or any loading or unloading device, the immovable or fixed parts of which shall be within, the clear spaces over or adjacent to any such track which are provided for in section 2 hereof, and not covered by the exceptions in said section 2, may make application to the Michigan public service commission for permission so to do, and *the commission is hereby vested with power and authority,* and it is hereby made its duty, *upon the filing of any such application, to authorize the construction,* erection or placement, and the subsequent maintenance, *of such bridge, structure,* pole or other obstruction *or loading or unloading device, as the case may be, within such lesser spaces as may be described in such application: Provided, That in the judgment of the commission, a compliance with the clear spaces hereinbefore prescribed would be unreasonable, unnecessary or impracticable, and that the erection, construction or placement, and the subsequent maintenance, of such bridge, structure, pole or other immovable obstruction, or loading or unloading device, as the case may be, within such lesser spaces, will not create a condition unduly hazardous to the employees of the person engaged in the operation of such track."* (Emphasis supplied; footnote omitted.)

The circuit judge's opinion stated the standard of review as follows:

"Petitioner seeks review of the order under chapter 6 of the Administrative Procedures Act (APA). MCL 24.301 *et seq.;* MSA 3.560(201) *et seq.* However, the APA does not govern this appeal. The order is properly appealed under MCL 462.26; MSA 22.45. *Sullivan v Public Service Comm,* 93 Mich App 391, 396; 287 NW2d 188 (1979)."[1]

---

[1] Under this section, the complainant must show by "clear and satisfactory evidence" that the order of the PSC is "unlawful or unreasonable, as the case may be". MCL 462.26(e); MSA 22.45(e).

This holding was error. The power to authorize clearance variances under the clearance space act was transferred from the PSC to MDOT by Executive Order 1975-1; MCL 247.822; MSA 9.216(102). This being the case, the statutory review provision governing actions to vacate PSC orders, MCL 462.26; MSA 22.45, does not apply.

Additionally, we find that the hearing officer's conclusion was legally erroneous. The clearance space act provides that subclearance is allowable only if it will not create a condition unduly hazardous to the railroad employees. MCL 470.103; MSA 22.804(3). Because the safety of railroad workers is the operative criterion, the hearing officer erred in balancing their safety against that of Plainwell's employees.

We reverse and remand this cause to the hearing officer for a determination of whether or not the proposed construction presents an unduly hazardous condition to the railroad employees. If the decision on remand is appealed, the circuit court will employ the general standard of review of administrative decisions, *i.e.*, whether the decision is supported by competent, material, and substantial evidence on the whole record. *Russo v Dep't of Licensing & Regulation*, 119 Mich App 624; 326 NW2d 583 (1982). We do not retain jurisdiction.